# United States Court of Appeals
## For the First Circuit

No. 22-1881

DARWIN MURILLO MOROCHO,

Petitioner,

v.

MERRICK B. GARLAND,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Howard, and Montecalvo,
Circuit Judges.

Tasha J. Bahal, with whom WilmerHale LLP was on brief, for
petitioner.
Rachel P. Berman-Vaporis, Trial Attorney, Office of
Immigration Litigation, Civil Division, with whom Brian M.
Boynton, Principal Deputy Assistant Attorney General, and Dawn S.
Conrad, Senior Litigation Counsel, Office of Immigration
Litigation, were on brief, for respondent.

August 21, 2023

**MONTECALVO, <u>Circuit Judge</u>**.    Petitioner Darwin Murillo Morocho seeks review of an order of the Board of Immigration Appeals ("BIA") affirming the denial of his application for deferral of removal to Ecuador under the Convention Against Torture ("CAT").    Murillo Morocho claims that, if returned to Ecuador, it is more likely than not that he would be tortured by the Ecuadorian government itself or by private actors acting with the consent or acquiescence of public officials.    Before this court, he argues that the BIA applied the wrong standard of review to the Immigration Judge's ("IJ's") legal conclusions.    He further claims that both the BIA and the IJ applied the incorrect legal standard in assessing whether the Ecuadorian government would more likely than not consent or acquiesce in his torture.    Finally, he argues that even if the BIA and IJ applied the proper legal standards, the BIA's decision, which adopts the IJ's decision, is not supported by substantial evidence and that the IJ erred in not giving him the opportunity to further corroborate his testimony.

We agree that the agency[1] applied the incorrect legal standard to the "consent or acquiescence" prong of Murillo Morocho's CAT claim.    We therefore grant his petition for review in part, vacate the order of the BIA denying Murillo Morocho CAT

---

[1] We refer to the BIA and the IJ collectively as the "agency."

relief as to Ecuador, and remand for further proceedings consistent with this opinion.

## I. Background

Murillo Morocho is a citizen of Ecuador. In 2017, he was involved in an incident with, what he says, is a powerful family in Ecuador. The 2017 incident ultimately resulted in attempted-murder charges against Murillo Morocho in Ecuador.

The details of the 2017 incident are disputed. Murillo Morocho asserts that the alleged victim[2] was attempting to rape Murillo Morocho's girlfriend, that he intervened to stop the attempted assault, and that a tussle between the two men ensued, causing the victim's injuries. But the victim and other witnesses tell a different story. They claim that Murillo Morocho became upset because his girlfriend's shorts had been lowered, that Murillo Morocho cast blame on the victim, and that a fight arose between the two men. During the fight, they say, Murillo Morocho stabbed the victim ten times with a piece of broken glass. Following the incident, Murillo Morocho was charged with attempted murder.

Whose story is correct is largely beside the point for purposes of the present petition for review. As we discuss below,

---

[2] For the ease of the reader, from here on, we will refer to the alleged victim simply as victim. We cast no judgment as to what occurred.

the IJ's adverse credibility determination is not before us. And so for purposes of this petition, we assume that Murillo Morocho's testimony regarding the 2017 incident is accurate.

Before the IJ, Murillo Morocho's uncle attested that the victim's family threatened him twice, informing him that they would kill Murillo Morocho and Murillo Morocho's family. The second time that the victim's family threatened Murillo Morocho's uncle, his uncle was at home. The victim's family remained at his uncle's house for about half an hour, until the uncle's family informed them that Murillo Morocho no longer lived there, let alone in Ecuador -- even though Murillo Morocho still was in Ecuador at the time. Following the second threat, the uncle obtained a "stay away" order from the Ecuadorian police. He and his family also moved to another town. Since the issuance of the "stay away" order and relocation to another city, the uncle has not received additional threats from the victim's family.

Murillo Morocho, for his part, testified that the victim threatened him during the incident and that individuals associated with the victim's family likewise threatened him shortly after the incident. He further claims that the victim's family has interfered with his attempts to obtain counsel in the criminal proceedings in Ecuador.

In response to the threats, and out of fear for his safety, Murillo Morocho stayed at his grandmother's house for two

weeks.  He then moved to a city a few hours outside of his hometown.

There, he lived in hiding until, in May 2018, he fled Ecuador for

the United States.

Almost three years after Murillo Morocho settled in the

United States, the Department of Homeland Security served Murillo

Morocho with a Notice to Appear, charging him with removability

for entering the country without admission or parole under Section

212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C.

§ 1182(a)(6)(A)(i).  After various procedural events that are

irrelevant to the present petition for review, Murillo Morocho

conceded removability and sought deferral of removal under CAT.[3]

The IJ denied CAT relief, finding that Murillo Morocho was not

credible, that he failed to provide adequate corroborating

evidence on the critical aspects of his claim, and accordingly

failed to meet his burden of proof under the CAT.  Notwithstanding

the IJ's conclusion that the adverse credibility finding doomed

Murillo Morocho's CAT claim, the IJ alternatively assessed

whether, even considering Murillo Morocho's testimony, he could

succeed on his CAT claim.  The IJ concluded that Murillo Morocho's

claim would fail on the merits because, even with his testimony,

---

[3] The parties agree that deferral of removal under CAT was
the only form of immigration relief Murillo Morocho was eligible
for due to an Interpol Red Notice issued in connection with the
pending charges in Ecuador and Murillo Morocho's subsequent
flight.

he did not marshal sufficient evidence to show that it was more likely than not that, upon return to Ecuador, he would be tortured with the consent or acquiescence of the Ecuadorian government.

Murillo Morocho appealed the IJ's decision to the BIA who dismissed Murillo Morocho's appeal in a brief decision. The BIA opted to bypass the IJ's adverse credibility finding and rest its affirmance solely on the IJ's merits analysis that considered Murillo Morocho's testimony. It adopted the IJ's merits analysis in full, placing particular emphasis on the IJ's finding that the victim's family was not more likely than not to seek out Murillo Morocho if he were to return to Ecuador and that the Ecuadorian courts had offered to protect Murillo Morocho from the victim's family.

Murillo Morocho timely filed the present petition for review. Shortly after, he moved for an emergency stay of removal, which this court eventually denied. In early 2023, Murillo Morocho was removed to Ecuador. We now address the petition for review, mindful that our decision to deny the stay does not foreclose us from granting the petition for review today. See, e.g., Ali v. Garland, 33 F.4th 47, 52, 63 (1st Cir. 2022) (granting petition for review after previously denying petitioner's motion to stay removal).

## II. Legal Standards

"To establish eligibility for CAT protection, [a petitioner] must demonstrate that he would more likely than not be subject to torture if removed . . . ." H.H. v. Garland, 52 F.4th 8, 16 (1st Cir. 2022). Torture is defined as "(1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004) (quoting In re J-E-, 23 I. & N. Dec. 291, 297 (BIA 2002)).

An IJ's determination regarding an applicant's eligibility for CAT is a mixed question of law and fact. H.H., 52 F.4th at 16. "[W]hether a person is likely to suffer a particular harm and the role of the foreign government in causing or allowing that harm" are findings of fact. Id. (quoting DeCarvalho v. Garland, 18 F.4th 66, 73 (1st Cir. 2021)). On the other hand, questions, such as, "whether the government's role renders the harm by or at the instigation of[,] or with the consent or acquiescence of[,] a public official," i.e., how the law applies to the facts, are legal ones. Id. (alterations in original) (quoting DeCarvalho, 18 F.4th at 73).

Where, as here, "the BIA adopts and affirms the IJ's ruling but also examines some of the IJ's conclusions, this [c]ourt reviews both the BIA's and IJ's opinions." Id. (quoting Sanabria Morales v. Barr, 967 F.3d 15, 19 (1st Cir. 2020)).  We examine the agency's findings of fact under the substantial evidence standard, upholding its factual findings so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sanabria Morales, 967 F.3d at 19 (quoting Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014)).  Our review of conclusions of law, on the other hand, is de novo.  Id.  We confine ourselves to the reasoning relied on by the agency and will not affirm on other bases.  Lasprilla v. Ashcroft, 365 F.3d 98, 100 (1st Cir. 2004).  Similarly, we limit our review to those issues properly exhausted before the agency.  Sunoto v. Gonzales, 504 F.3d 56, 59 (1st Cir. 2007).

### III. Discussion

Murillo Morocho premises his CAT claim on dual threats: (1) the likelihood of torture by way of the victim's family, whether that be through violent acts by the family or violent acts by others operating at the direction of the family; and (2) the likelihood that he would be detained upon return to Ecuador in a

prison system where gruesome, medievalesque violence is running rampant.[4]

Murillo Morocho raises four issues in his petition for review, arguing that: (1) the BIA applied the wrong standard of review to the IJ's "consent or acquiescence" determination; (2) the IJ -- and the BIA by its adoption of the IJ's decision -- applied the wrong legal test in determining whether Murillo Morocho would be tortured by private criminal actors in prison with the consent or acquiescence of government officials; (3) the agency's

---

[4] At oral argument, counsel for Murillo Morocho seemed to concede that Murillo Morocho's claim rested only on the first ground. But we are reluctant to read too much into this arguable concession, especially as Murillo Morocho's briefing before this court and the BIA clearly puts forth both potential threats as bases for his CAT claim. See, e.g., Corrected Br. for Pet'r at 16 ("Murillo Morocho argued to the IJ that he was more likely than not to face torture in Ecuador at the hands of prison officials or other prison inmates acting with officials' consent or acquiescence because of the failure of state control in Ecuadorian prisons and the fact that he was being targeted for vengeance by . . . a notoriously dangerous and violent family"), 34-41 ("Murillo Morocho faces dual threats following removal. He faces a direct and ominous threat from the prison system itself[]" as well as a threat from the victim's family.); Corrected App. at 10 (Murillo Morocho's Br. to the BIA) ("[I]t is more likely than not that [Murillo Morocho] will be physically harmed in jail; a likelihood that only increases if the [victim's] family has the influence to target him in jail. . . . [Murillo Morocho] is likely to be tortured irrespective of whether the [] family targets him."), 23 (stressing that even if the IJ found the family could not reach him, his CAT claim did not necessarily fail because his "CAT claim is not dependent on the [] family"). Moreover, we have held, in other contexts, that "[t]his court is not bound by a party's concessions," United States v. Borrero-Acevedo, 533 F.3d 11, 15 n.3 (1st Cir. 2008), and we find that such caution likewise is warranted in this case where the briefing is at odds with a seeming oral concession.

decision is unsupported by substantial evidence; and (4) the IJ erred in not giving him an opportunity to further corroborate his testimony regarding the powerful reach of the victim's family. We address each argument in turn.

### A. Consent or Acquiescence Determination

We need not spend time on Murillo Morocho's first argument because even if the BIA understood and purported to apply the correct standard of review, we agree with Murillo Morocho that the IJ and BIA did not apply the correct legal test to the "consent or acquiescence" question.

We start by addressing whether the IJ had to reach this issue and make a legal determination as to whether the Ecuadorian government's actions or inactions constituted "consent or acquiescence" to torture by private criminal actors.

"In assessing whether CAT relief is appropriate," an IJ engages in two steps, first "mak[ing] findings of fact (e.g., whether a person is likely to suffer a particular harm and the role of the foreign government in causing or allowing that harm)" and then "determin[ing] how the law applies to those facts (e.g., whether such harm rises to the level of torture and whether the government's role renders the harm 'by or at the instigation of or with the consent or acquiescence of a public official[)].'" DeCarvalho, 18 F.4th at 73 (quoting Samayoa Cabrera v. Barr, 939 F.3d 379, 382 (1st Cir. 2019)). Accordingly, if the IJ finds that

a person is not more likely than not "to suffer a particular harm," it follows that the IJ need not reach the second question of "consent or acquiescence of a public official." Id. Indeed, such a determination would be futile in light of the IJ's finding that harm is unlikely to occur in the first place.

As to the portion of Murillo Morocho's claim linked to the victim's family, a legal determination on the consent or acquiescence question was unnecessary because of the IJ's <u>factual finding</u> that the victim's family was unlikely to seek out Murillo Morocho if he were back in Ecuador. Specifically, the IJ was "not convinced that the [] family would or could arrange for [Murillo Morocho's] torture, including death, in prison" and found that the "family [would likely] comply with government-issued orders regarding [Murillo Morocho]." Thus, as the IJ found that the victim's family was unlikely to seek out Murillo Morocho and that, in any event, the family would likely respect any protective orders that the government issued regarding Murillo Morocho, the IJ did not need to reach whether the Ecuadorian government would consent or acquiesce in this proposed harm.

As to the portion of Murillo Morocho's claim premised on general violence in prisons, the same cannot be said. This portion of Murillo Morocho's claim does not rely on the likelihood of the victim's family seeking vengeance. Instead, it depends on the likelihood of torture at the hands of private or public actors in

prison even if the victim's family chooses not to target Murillo Morocho.  On this front, we discern three findings by the IJ: (1) "acts of violence appear to be widespread i[n] prisons"; (2) acts of violence, including those rising to torture, "appear to primarily be the conduct of prisoners"; and (3) acts rising to torture by police and prison guards "d[o] not appear to be widespread."

From these findings, it is clear that although the IJ did not foresee a likelihood of direct torture by public officials, the IJ also did not find harm, including acts of torture, by private actors to be unlikely.  In fact, the IJ acknowledged that "acts of violence" were "widespread."  Therefore, having found that "[a]cts that rise to the level of torture [] appear to primarily be the conduct of prisoners" and not clearly stating that such acts were not more likely than not to occur, the IJ had to proceed and determine what steps the government likely would or

would not take and whether that action or inaction constituted consent or acquiescence.[5]

The IJ did just that, making several findings about what steps the Ecuadorian government has taken to address violence in its prisons and determining that Murillo Morocho had failed to show it was more likely than not that the government would consent or acquiesce to any torture inflicted by private parties. The BIA, for its part, adopted the IJ's analysis and likewise determined that the government would not consent or acquiesce in any likely torture. But the agency's failure to break down Murillo Morocho's CAT claim into its constituent parts makes it difficult

---

[5] The government encourages us not to reach Murillo Morocho's arguments regarding the agency's consent or acquiescence determination for a separate reason: exhaustion. It argues that Murillo Morocho failed to exhaust his argument that private criminal actors will more likely than not torture him with the Ecuadorian government's acquiescence. We disagree. It is true that we typically will not review an issue when a petitioner has failed to present and sufficiently develop it before the BIA. Sunoto, 504 F.3d at 59. But where an issue "has been squarely presented to and squarely addressed by the agency . . . even if the agency raised [the issue]" itself, we will deem it exhausted. Mazariegos-Paiz v. Holder, 734 F.3d 57, 63 (1st Cir. 2013). Such is the case here as evinced by the discussion of acquiescence in both the BIA's and IJ's decisions. What is more, Murillo Morocho's arguments before the BIA more than alluded to the acquiescence issue. Indeed, Murillo Morocho's brief to the BIA explicitly argued that the IJ failed to properly evaluate whether he would be subject to torture by private actors with the acquiescence of the Ecuadorian government. Thus, we are reluctant to agree with the government that Murillo Morocho "insufficiently developed" his consent or acquiescence argument. See Sunoto, 504 F.3d at 59 (opting to apply the "insufficiently developed" standard "generously").

for us to discern whether the agency understood and applied the proper legal test to the consent or acquiescence question.

We previously have clarified that "acquiescence" occurs when (1) officials are "aware[] of [torture]" and (2) "thereafter breach [their] legal duty to prevent such activity." H.H., 52 F.4th at 19 (second alteration in original) (quoting 8 C.F.R. § 1208.18(a)(7)). Public officials have awareness of torture not only when they know of an activity constituting torture, but also when they remain willfully blind to it. Id. at 20. As for a government satisfying its obligation to intervene, we have "express[ed] skepticism that any record evidence of efforts taken by the foreign government to prevent torture, no matter how minimal, will necessarily be sufficient to preclude the agency from finding that a breach of the duty to intervene is likely to occur." Id. at 21 (citing De La Rosa v. Holder, 598 F.3d 103, 110-11 (2d Cir. 2010)).

Neither the IJ nor the BIA articulated this standard with any clarity.[6]  To be fair, the agency did make several statements that go to the acquiescence question.  For example, the IJ noted that "the President has been aggressive in addressing" the torture of detainees, "has invited outside organizations into Ecuador to propose solutions[,] . . . has increased funding [to prisons,] and [has] reduced overcrowding."  In addition, the IJ acknowledged the President's use of "police and military forces to

_____

[6] Prior to recounting the evidence relevant to the acquiescence question and engaging in its analysis on this point, the IJ cited and briefly explained the BIA's decision in In re J-E-, 23 I. & N. Dec. 291.  This reference leaves us with further doubt that the agency understood and applied the proper legal test.  In re J-E- is largely inapposite here.  There, the petitioner premised his CAT claim upon Haiti's indefinite detention practice, its substandard prison conditions, and police violence.  Id. at 292.  The BIA rejected the petitioner's arguments regarding Haiti's detention practice and prison conditions because they failed at the second prong of the CAT analysis -- that is, neither the detention practice nor the prison conditions, such as inadequate food, were "specifically intended to inflict severe pain or suffering."  Id. at 300.  As to the portion of the petitioner's claim regarding intentional police mistreatment, the BIA concluded that such violence was isolated and therefore not more likely than not to occur.  Id. at 303-04.  Here, the agency was not dealing with a claim that the government is intentionally inflicting substandard prison conditions, such as inadequate food, medical care, water, or exercise.  Rather, the agency was faced with a claim that the government was consenting to or acquiescing in intentionally inflicted, gruesome violence by private actors. Thus, In re J-E- provides little guidance in evaluating this facet of Murillo Morocho's claim, which turns on the fourth, not second, prong of the CAT analysis.

- 15 -

reduce violence and contraband" and that "[s]ome prison officials have been held accountable for abuses."[7]

It is less clear, however, whether the agency evaluated the effectiveness of those steps and whether they met the government's duty to intervene.  Neither the IJ's nor the BIA's decision addressed what "legal duty" Ecuadorian authorities had in this situation and whether the government's efforts satisfied it.  These omissions prevent us from determining whether the agency's analysis reflects reasoned consideration of Murillo Morocho's CAT claim that he is more likely than not to be tortured by private actors with the acquiescence of the government based on the general state of violence in Ecuador's prisons.  Cf. Scarlett v. Barr, 957 F.3d 316, 334-35 (2d Cir. 2020) (vacating in part the agency's denial of CAT relief and remanding for similar omissions).  That is particularly so when other parts of the record suggest that the government's steps have been inadequate and ineffectual.  See, e.g., Corrected App. at 50, 133-35 (expert testimony acknowledging the government's efforts but describing them as "too little, too late"), 207 (Reuters article noting how "[t]he Constitutional Court has questioned the measures rolled out across prisons, saying

_____

[7] The specific type of abuses that the IJ found the President was combatting effectively -- i.e., violence inflicted by officials themselves or the enabling of violence by private actors through furnishing of contraband -- is not clear.

that the crisis will require more than temporary emergency actions").

Adding to our concern, to the extent that the agency contemplated whether the government's actions or inaction met its legal duty to intervene, it appears that the agency may have thought that any efforts by high-level officials satisfy the government's duty to intervene. Not only have we expressed skepticism that "<u>any</u> record evidence of efforts" to prevent torture will "necessarily" meet the duty to intervene, <u>H.H.</u>, 52 F.4th at 21, the agency's approach overlooks the possibility that other lower-level government officials, such as prison guards, still may be acquiescing in torture by private actors notwithstanding other officials' attempts to thwart such complicity, <u>see</u> <u>De La Rosa</u>, 598 F.3d at 110. Stated differently,

> [w]here a government contains officials that would be complicit in torture, and that government, on the whole, is admittedly incapable of actually preventing that torture, the fact that some officials take action to prevent the torture would seem neither inconsistent with a finding of government acquiescence nor necessarily responsive to the question of whether torture would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."

<u>Id.</u> (quoting Article 1, 1465 U.N.T.S. 85(CAT)).

We are mindful that it is ultimately Murillo Morocho's burden to demonstrate acquiescence and that it may well have been

his task to show that the Ecuadorian government had a
responsibility to do more. So too are we cognizant of the
"presumption of regularity" that attaches to the BIA's actions,
Enwonwu v. Gonzales, 232 F. App'x 11, 15 (1st Cir. 2007) (per
curiam); see Samayoa Cabrera, 939 F.3d at 383, and that there is
no requirement for the agency to "expressly parse or refute on the
record each individual argument or piece of evidence offered by
the petitioner" where it "has given reasoned consideration to the
petition, and made adequate findings," H.H., 52 F.4th at 23
(quoting Wei Guang Wang v. BIA, 437 F.3d 270, 275 (2d Cir. 2006)).

     But here the findings are inadequate. On the current
record, we cannot tell whether the agency concluded Murillo Morocho
failed to carry his burden on the acquiescence point or whether
the agency failed to understand and properly apply the acquiescence
test. See Scarlett, 957 F.3d at 335 ("[O]n the existing record,
we cannot discern whether the agency found that [petitioner] failed
to carry his burden on the point of legal responsibility, or
whether it failed to apply this part of the acquiescence standard
all together."). We therefore remand the portion of Murillo
Morocho's claim premised upon the rampant violence in prisons for
reconsideration of the acquiescence question under the proper
legal test. See Castañeda-Castillo v. Gonzales, 488 F.3d 17, 22
(1st Cir. 2007) (en banc) ("If the IJ and [BIA] rested their
decision upon a misunderstanding of the legal elements of [a

claim], the ordinary remedy is a remand to allow the matter to be considered anew under the proper legal standards.").

## B. Factual Findings Regarding Threat From Victim's Family

We turn next to Murillo Morocho's claim that the agency's factual findings are unsupported by substantial evidence.

Murillo Morocho contends that the agency erred in finding that the victim's family was not likely to seek him out and follow through on their threats, especially if a court ordered the family to leave Murillo Morocho alone.[8] Focusing on the seriousness of the two threats that the family made to his uncle and the vagueness of the court's offer of "protection" during Murillo Morocho's criminal proceedings, Murillo Morocho claims

---

[8] In advancing his argument that the IJ's factual findings are unsupported by substantial evidence, Murillo Morocho also purports to challenge several factual findings relating to the likely steps that the Ecuadorian government would take to protect him in prison. Murillo Morocho's challenges on this front, however, primarily repeat his arguments regarding the agency's failure to apply the proper legal test to the acquiescence question under the guise of substantial evidence. He does not dispute that the Ecuadorian government is taking the actions that the IJ found it was taking, e.g., inviting help from outside and using military force to reduce violence, but rather disputes how these actions stack up against the acquiescence test. As explained above, we already have concluded that Murillo Morocho's claim must be remanded for correction of this legal error.

that the record compels a conclusion that the victim's family likely would seek him out and has the power to do so.[9]

But this overlooks contrary evidence considered and emphasized by the IJ.  The IJ stressed that Murillo Morocho has not been physically harmed in Ecuador; that although his family had been threatened, they had not been harmed; and that after his uncle obtained a "stay away" order, the victim's family did not bother him.  Thus, even if we would weigh this competing evidence differently than the agency, we cannot say that the agency clearly erred in finding that the victim's family was not more likely than not to seek out Murillo Morocho or to ignore a court order to leave Murillo Morocho alone.  See Adeyanju v. Garland, 27 F.4th 25, 33 (1st Cir. 2022) ("To demonstrate clear error, one 'must do more than show that the finding is "probably wrong," for [a court] can reverse on clear-error grounds only if -- after whole-record review -- [it] ha[s] "a strong, unyielding belief" that the judge stumbled.'" (quoting United States v. Rivera-Carrasquillo, 933 F.3d 33, 42 (1st Cir. 2019))); Mashilingi v. Garland, 16 F.4th

_____

[9] At oral argument, counsel for Murillo Morocho also referred to the sealed material submitted with Murillo Morocho's motion to expedite argument in this case, arguing that this new evidence showed that Murillo Morocho currently is not safe.  In the petition before us, however, our review is limited to the record upon which the agency made its decisions, and we therefore may not consider the new evidence.  Sanabria Morales, 967 F.3d at 20 ("Our review is limited to 'the administrative record on which the order of removal is based.'" (quoting 8 U.S.C. § 1252(b)(4)(A))).

971, 978 (1st Cir. 2021) ("When the facts give rise to competing inferences, each of which is plausible, the IJ's choice between those competing inferences cannot be found to be unsupported by substantial evidence.").

### C. Credibility and Corroboration

Finally, Murillo Morocho argues that to the extent the IJ did not credit Murillo Morocho's testimony regarding the reach of the victim's family, he should have been permitted to provide additional corroborating evidence.  In light of our conclusion that the IJ's alternative determination that, even when crediting Murillo Morocho's testimony, the portion of  Murillo Morocho's CAT claim linked to the victim's family fails is supported, we need not address this argument.[10]  See Morgan v. Holder, 634 F.3d 53, 57 (1st Cir. 2011) ("[C]redibility determination is superfluous when the [applicant's] testimony, even if taken at face value, is insufficient to compel an entitlement to relief.").

We add that to the extent that Murillo Morocho is arguing that the BIA and IJ permitted the taint of the IJ's credibility finding to bleed through to the alternative merits determination on Murillo Morocho's CAT claim, we are not persuaded.  The agency's merits determination regarding the reach of the victim's family

_____

[10]  Murillo Morocho does not argue that the BIA erred in concluding that it did not need to reach his arguments relating to the adverse credibility determination notwithstanding its conclusion that the IJ's alternative merits rulings were sound.

did not rest on its perceived inconsistencies in Murillo Morocho's testimony or lack of corroborating evidence. Rather, as just explained, it weighed the competing evidence about the family's purported power and its respect for government orders, determining that in the end, the family was not more likely than not to seek out Murillo Morocho. The mere fact that the agency assumed for the sake of argument that Murillo Morocho's testimony was credible did not require the agency to treat it as persuasive. See Garland v. Ming Dai, 141 S. Ct. 1669, 1680 (2021) ("[E]ven if the BIA treats a[] [noncitizen's] evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof."); Dahal v. Holder, 489 F. App'x 470, 472 (1st Cir. 2012) (Souter, J.) (unpublished) (noting that an applicant's credible testimony may, but does not necessarily, suffice to establish entitlement to CAT relief); Joumaa v. Ashcroft, 111 F. App'x 15, 20 (1st Cir. 2004) (unpublished) (drawing distinction between credibility and persuasiveness of testimony by applicant for asylum, withholding of removal, and CAT protection). Nor did it mean that Murillo Morocho's testimony could not be outweighed by other competing evidence that showed the family was likely to comply with government orders to stay away from Murillo Morocho. See Ming Dai, 141 S. Ct. at 1681 ("[E]ven credible testimony may be outweighed by other more persuasive evidence . . . .").

## IV. Conclusion

For the reasons stated above, we conclude that the BIA and IJ failed to apply the proper legal test in assessing whether the Ecuadorian government would consent or acquiesce to acts of torture by private actors in Ecuadorian prisons. The IJ's factual findings regarding the reach and desires of the victim's family, however, are supported by substantial evidence. Accordingly, based on the record before us, Murillo Morocho's CAT claim premised on the likelihood of torture by the victim's family fails. We therefore grant the petition for review in part, deny it in part, vacate the agency's decision insofar as it denied Murillo Morocho's CAT claim linked to the general violence in Ecuadorian prisons, and remand the case to the BIA for further proceedings consistent with this opinion.